OPINION
SILER, Circuit Judge.
Plaintiff Margaret White appeals the district court rulings that granted summary judgment for Defendant Baptist Me *872 morial Health Care Corp. (Baptist) and decertified her class action against Baptist. She argues the district court incorrectly held that Baptist’s policy for compensating hourly employees for missed meal breaks was lawful under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. White states this ruling caused the district court to wrongfully grant Baptist’s motions for summary judgment and class action decertification. For the following reasons, we affirm.
I.
A.
WTiite was a nurse for Baptist from August 2005 to August 2007 and treated patients that came to the emergency department. She did not have a regularly scheduled meal break due to the nature of her job at the hospital. Meal breaks occurred during her shift as work demands allowed.
During her new employee orientation, WTiite received a copy of Baptist’s employee handbook. The handbook stated employees working shifts of six or more hours receive an unpaid meal break that is automatically deducted from their pay checks. The handbook also provided that if an employee’s meal break was missed or interrupted because of a work related reason, the employee would be compensated for the time she worked during the meal break. Baptist employees were instructed to record all time spent performing work during meal breaks in an “exception log” whether the meal break was partially or entirely interrupted.
White signed a document that stated she understood the meal break policy and, therefore, understood that if she worked during her meal break, she had to record that time in an exception log in order to be compensated for her time.
White recorded the occasions where her meal break was partially or entirely interrupted in the exception log. She stated that when she reported missing a meal break, which her entire nurse unit missed as well, she was compensated for her time. She also states that there were occasions where she individually missed meal breaks but was not compensated. But on at least one occasion when she reported missing a meal break individually, she was compensated for her time. From time to time she told her supervisors that she was not getting a meal break and she also told Baptist’s human resources department. However, she never told her supervisors or the human resources department that she was not compensated for missing her meal breaks.
Eventually, White stopped reporting her missed meal breaks in the exception log despite Baptist’s instructions for employees to record their time in the log. She does not remember or have records of when her meal breaks were interrupted, either entirely or partially, and Baptist failed to compensate her.
In addition to the exception log, White knew Baptist’s procedure to report and correct payroll errors. If there was an error, she could report the mistake to a nurse manager who would resolve the issue. White stated that when she used this procedure the errors were “handled immediately.” However, she did not utilize this procedure to correct the interrupted meal break errors that she failed to report because she felt it would be “an uphill battle.”
B.
Wdiite filed suit and moved for conditional class certification against Baptist in 2008, alleging violations of the FLSA for failing to compensate her for working dur *873 ing her lunch breaks. The district court granted in part and denied in part White’s motion for conditional class certification. After Baptist moved for summary judgment and class decertification, the district court granted Baptist’s motions.
II.
We review summary judgment rulings de novo. Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 811 (6th Cir.2011). Summary judgment should be granted to the moving party if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. Id. We must draw all reasonable inferences in the nonmoving party’s favor. Id.
Under the FLSA, we review class action certification rulings for an abuse of discretion. O’Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 584 (6th Cir.2009).
III.
A.
“[A]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated.” Myers v. Copper Cellar Corp., 192 F.3d 546, 551 (6th Cir.1999) (citations and internal quotation marks omitted). “Work not requested but suffered or permitted is work time.” 29 C.F.R. § 785.11.
An automatic meal deduction system is lawful under the FLSA. See generally Hill v. United States, 751 F.2d 810 (6th Cir.1984) (The U.S. Postal Service’s automatic 30 minute lunch deduction system was upheld against a FLSA suit brought by a postman plaintiff where he claimed that he was continuously on duty during his mealtime and should be compensated for his mealtime.). “Time spent predominantly for the employer’s benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the provisions of the [FLSA].” F.W. Stock & Sons, Inc. v. Thompson, 194 F.2d 493, 496-97 (6th Cir.1952) (citation and internal quotation marks omitted). “As long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer’s benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA.” Hill, 751 F.2d at 814. A de minimis rule applies when “the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours.” Id. at 815. Compensation is necessary “only when an employee is required to give up a substantial measure of his time.” Id.
If an “employer knows or has reason to believe that [a worker] is continuing to work [then] the time is working time.” 29 C.F.R. § 785.11. Therefore, the issue is whether Baptist knew or had reason to know it was not compensating White for working during her meal breaks.
1.
There is a dearth of case law on compensation for missed meal breaks under the FLSA as compared to the case law on unpaid overtime. But “[a] claim for nonpayment of work during an established mealtime is analytically similar to an unpaid overtime claim.” Hertz v. Woodbury County, 566 F.3d 775, 783 (8th Cir.2009) (citation omitted). Since “[t]he gravamen of [White’s] complaint is that [she] performed ‘work’ during mealtimes, [she is essentially arguing] that the work amounted to overtime because it was in addition to their already-scheduled, eight-hour *874 shift, and the work during these mealtimes went uncompensated.” Id.
In Hertz, police officers sued under the FLSA for unpaid overtime compensation and for work performed during mealtimes. 566 F.3d at 777-78. The County tracked the duty-status of an officer through a program called the Computer Aided Dispatch (CAD), which recorded when an officer radioed that he was on active duty and when he radioed that he had completed his shift. Id. at 779. Officers were required to submit paperwork to their supervisors to be paid overtime and “requests were ‘rarely denied.’ ” Id. The police officers argued that the County had constructive knowledge of the amount of overtime worked because of its access to the CAD records and, therefore, “the County knew or should have known that they were working overtime.” Id. at 781.
The Eighth Circuit held, “Access to records indicating that employees were working overtime, however, is not necessarily sufficient to establish constructive knowledge.” Id. at 781-82 (citing Newton v. City of Henderson, 47 F.3d 746, 749 (5th Cir.1995)). The court ruled, “The FLSA’s standard for constructive knowledge in the overtime context is whether the County ‘should have known,’ not whether it could have known.” Id. at 782 (citation omitted). It went on to say, “It would not be reasonable to require that the County weed through non-payroll CAD records to determine whether or not its employees were working beyond their scheduled hours. This is particularly true given the fact that the County has an established procedure for overtime claims that Plaintiffs regularly used.” Id. (citing Newton, 47 F.3d at 749).
Turning to the issue of unpaid work during meal times, the court held the officers were “in the best position[ ]” to prove that they were working during their mealtimes and “[t]o require ... the County [to] prove a negative — that an employee was not performing ‘work’ during a time reserved for meals — would perversely incentivize employers to keep closer tabs on employees.... ” Id. at 784. The court concluded that “under the FLSA, the employee bears the burden to show that his or her mealtimes were compensable work.” Id.
In Newton, a city police officer was assigned to a U.S. Drug Enforcement Agency (DEA) Task Force, which had the authority to control his daily duties, but he remained employed by the City, which still had the responsibility for paying his salary and benefits as well as overtime. 47 F.3d at 747. The City told the officer that it could pay him 12.5 hours of overtime per pay period but no more than that because the City could not afford it. Id. at 747-48. The officer “submitted time reports to the City and was paid for all of the hours claimed on [the] time reports.” Id. at 748.
The officer filed a FLSA suit because he claimed that the City did not compensate him for all of the overtime hours he worked as a member of the Task Force. Id. at 747. He admitted “that he never made a demand for payment for unauthorized overtime hours until he resigned.” Id. at 748. He did, however, submit forms to the DEA that stated the overtime hours he was claiming in his lawsuit. Id. The officer understood that the DEA forms were not for payroll purposes and did not provide the forms to the City until he resigned. Id. But he claimed that the City knew he was working more overtime hours than he reported to them because he reported his activities to his City supervisors on a daily basis. Id. Even though he admitted that in these daily oral reports he did not specify the number of hours he was working, the officer argued that, based on these reports, his City supervisors “must *875 have known that he was working overtime.” Id.
One of the officer’s City supervisors had access to information regarding the activities of the Task Force as well as the activities of its individual members. The trial court found that based on this access to the Task Force’s activities, the City had constructive knowledge that the officer was working overtime. Id. at 749. But the Fifth Circuit reversed, holding that “as a matter of law such ‘access’ to information does not constitute constructive knowledge that [the officer] was working overtime.” Id.
The court ruled that the city had “specific procedures” for the officer to follow in order to be paid overtime and the officer ignored these procedures. Id. The court reasoned:
If we were to hold that the City had constructive knowledge that [the officer] was working overtime because [his City supervisor] had the ability to investigate whether or not [the officer] was truthfully filling out the City’s payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.
Id. The issue was not if the officer’s City supervisor “could have known that [the officer] was working overtime hours,” but “whether he should have known.” Id.
In fight of the fact that [his City supervisor] explicitly ordered [the officer] not to work overtime and in fight of the fact that [the officer] admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force’s activities, standing alone, is insufficient to support the conclusion that the City should have known that [the officer] was working overtime.
Id. Therefore, the evidence did not “support [the officer’s] contention that the City should have known that the hours reported on his City time sheets were incorrect.” Id. at 750.
The Ninth Circuit, in Forrester v. Roth’s I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981), held that “where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer’s failure to pay for the overtime hours is not a violation of [the FLSA].” Elaborating on this principle, the court stated, “[t]he relevant knowledge is not T know that the employee was working,’ but T know the employee was working and not reporting his time.’ ” Raczkowski v. TC Const. Co., Inc., 8 F.3d 29 (table), 1993 WL 385483, at *1 (9th Cir.1993) (citing Forrester).
The plaintiff in Forrester knew he had to report overtime on his time sheet and that his employer regularly paid reported overtime. 646 F.2d at 414. He was paid for the overtime he reported and he admitted that had he reported the additional overtime hours that were the subject of his lawsuit that he would have been paid for those hours too. Id. The court ruled:
An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [the FLSA],
Id. at 414-15.
Finally, we have held, in an unpublished opinion, that:
*876 At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA’s overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer’s efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.
Wood v. Mid-America Mgmt. Corp., 192 Fed.Appx. 378, 381 (6th Cir.2006).
2.
Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for nonpayment if the employee fails to follow the established process. See Hertz, 566 F.3d at 781-82; Newton, 47 F.3d at 749-50; Forrester, 646 F.2d at 414-15. When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer’s ability to comply with the FLSA. See Hertz, 566 F.3d at 781-82; Newton, 47 F.3d at 749-50; Forrester, 646 F.2d at 414-15. See also Raczkowski, 8 F.3d 29 (table), 1993 WL 385483, at *1; Wood, 192 Fed.Appx. at 381.
Each time White followed Baptist’s procedures for being compensated for interrupted meal breaks or for payroll errors she was compensated. But now White states she decided not to follow Baptist’s procedures for being compensated for interrupted meal breaks and argues that Baptist violated the FLSA for not compensating her for interrupted meal breaks. White occasionally told her supervisors that she was not getting her meal breaks. But she never told her supervisors that she was not being compensated for missing her meal breaks. Accordingly, there is no way Baptist should have known she was not being compensated for missing her meal breaks. Therefore, her claims fail.
White cites a number of cases to advance her position that Baptist should have known she was working during her meal breaks despite its reporting system. However, these cases involved situations where the employer prevented the employees from reporting overtime or were otherwise notified of the employees’ unreported work. See, e.g., Kuebel v. Black & Decker Inc., 643 F.3d 352, 356-57 (2d Cir.2011) (employer did not allow the employee to report overtime); Chao v. Gotham Registry, Inc., 514 F.3d 280, 283-84, 287-91 (2d Cir.2008) (employer had “full knowledge” that its employees were working overtime and failed to compensate them); Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1316 (11th Cir.2007) (employer prevented the employee from reporting overtime hours); Pabst v. Okla. Gas & Elec. Co., 228 F.3d 1128, 1131 (10th Cir.2000) (dispute revolved around whether all scheduled “on-call” time for technicians could constitute overtime or only time when they were called into work); Reich v. Dep’t of Conservation & Natural Res., 28 F.3d 1076, 1083-84 (11th Cir.1994) (employer had constructive knowledge when supervisors were “specifically instructed” to “closely monitor” hours to ensure compliance with the no overtime policy and when the employer knew that the monitoring was not being done based on a previous study); Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir.1975) (with the employer’s knowledge, the employee was never relieved for a meal break and always had to eat her meal while she worked); Brennan *877 v. Gen. Motors Acceptance Corp., 482 F.2d 825, 827 (5th Cir.1973) (employer discouraged employees from reporting overtime); Burry v. National Trailer Convoy, Inc., 338 F.2d 422, 425-27 (6th Cir.1964) (employer knew the employee’s time sheets were inaccurate).
Here, there is no evidence that Baptist discouraged employees from reporting time worked during meal breaks or that they were otherwise notified that their employees were failing to report time worked during meal breaks. White alleges that Baptist only allowed her to use the exception log when she missed her entire meal break. However, the district court correctly disregarded this assertion because it came from a post-deposition declaration that contradicted her earlier deposition testimony, which indicated that she had entered partially missed meal breaks in the exception log. Under Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), “a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party’s earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.” “A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction.” Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir.2006) (citations omitted). White did not offer an explanation for the contradiction. Accordingly, the district court rightly ignored White’s new position in her post-deposition declaration.
Baptist established a system to compensate its workers for time worked during meal breaks. When White utilized the system she was compensated and when she failed to use the system she was not compensated. Without evidence that Baptist prevented White from utilizing the system to report either entirely or partially missed meal breaks, White cannot recover damages from Baptist under the FLSA.
B.
Section 216(b) of the FLSA allows similarly situated employees to recover compensation from their employer in “opt-in” class action litigation. 29 U.S.C. § 216(b). See also Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir.2006). District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded. Comer, 454 F.3d at 546. District courts use a “fairly lenient standard” that “typically results in conditional certification of a representative class” when determining whether plaintiffs are similarly situated during the first stage of the class certification process. Id. at 547 (citation and internal quotation marks omitted). Here, the district court applied the fairly lenient standard at the first stage and conditionally certified a class of Baptist employees.
At the second stage of the class certification process, district courts apply a “stricter standard” and more closely examine “the question of whether particular members of the class are, in fact, similarly situated.” Id. Lead plaintiffs “bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs.” O’Brien, 575 F.3d at 584 (citation omitted).
White bears the burden of showing that she and the opt-in plaintiffs are similarly situated. However, the district court properly dismissed her FLSA *878 claim. Therefore, “[without a viable claim, [White] cannot represent others whom she alleged were similarly situated.” In re Family Dollar FLSA Litigation, 637 F.3d 508, 519 (4th Cir.2011). Just as opt-in plaintiffs are not similarly situated to a lead plaintiff if their claims are dismissed, O’Brien, 575 F.3d at 586, a lead plaintiff cannot be similarly situated and represent opt-in plaintiffs without a viable claim. In re Family Dollar FLSA Litigation, 637 F.3d at 519. Since White cannot meet her burden that she is similarly situated to the opt-in plaintiffs because her FLSA claims were dismissed, decertification was proper.
AFFIRMED.